**SO ORDERED.**

**SIGNED this 08 day of May, 2009.**



_____/s/ Dale L. Somers_____
Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

_____

Designated for On-line Use but not for Print Publication

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re:<br><br>ALTERNATE FUELS, INC.,<br><br>    DEBTOR. | CASE NO. 09-20173<br>CHAPTER 11 |
| ALTERNATE FUELS, INC.,<br><br>    PLAINTIFF,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, ACTING BY AND THROUGH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI,<br><br>    DEFENDANT. | ADV. NO. 09-06018 |

MEMORANDUM OPINION AND ORDER GRANTING
TRAVELER'S MOTION TO INTERVENE AND
DEBTOR'S COMPLAINT FOR TURNOVER

Following argument on March 20, 2009, the Court took under advisement Debtor's adversary complaint for turnover (hereafter "Complaint"). Arguments were concurrently heard on the motion of creditor Travelers Casualty Company ("Travelers") to dismiss or suspend (hereafter "Motion"),[1] in which creditors Beachner Companies[2] and W. K. Jenkins[3] joined. That Motion was also taken under advisement and is the subject of a separate order denying the Motion. The findings of fact and conclusions of law stated therein are incorporated herein by reference.

As to the adversary Complaint, Debtor appeared by Gary Hanson of Stumbo Hanson, LLP. Defendant United States of America appeared by Assistant United States Attorneys Andrea Taylor and Christopher Allman. Travelers, which filed a motion to intervene in the adversary case, appeared by Keith Witten of Balkin Witten and Bernard Reinert and Chris Michener of Reinert Weishaar & Associates. Additional appearances on the Motion to dismiss or suspend are noted in the order denying that Motion. The Court has jurisdiction.[4]

**BACKGROUND FACTS.**

Debtor Alternate Fuels, Inc. ("AFI") filed a voluntary petition under Chapter 11 on January 28, 2009. Debtor was previously engaged in coal mining operations in Kansas and

---

[1] Doc. 32, case # 09-20173.

[2] Doc. 57, case # 09-20173.

[3] Doc. 63, case # 09-20173.

[4] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Orders for turnover of property to the estate are core proceedings which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(E). There is no objection to venue or jurisdiction over the parties.

Missouri. The Statement of Financial Affairs reports no income from business for years 2006 through 2008, and the asset schedules report no real property, machinery of unknown value, and $4,910,807.63 in judgment proceeds on deposit with the Clerk of the District Court for the Western District of Missouri. Scheduled liabilities are $10,969,807.58, comprised of $4,666,060.53 in claims secured by assignments of the judgment proceeds, $1,618,703.51 unsecured priority claims, and $4,685,043.54 unsecured nonpriority claims. AFI's liabilities are of essentially two types. The first are unliquidated and arise from ongoing reclamation obligations in the State of Missouri, for which bonds have been posted by some creditors, such as Travelers, Continental, and Jenkins. The second set are claims for money owed. Debtor filed under Chapter 11 not for the purpose of reorganization of an ongoing business, but to determine its liabilities and to achieve an orderly liquidation.

Prepetition, on or about September 29, 2006, the District Court for the Western District of Missouri entered a judgment on a claim of tortious interference with business activities in favor of AFI on a jury verdict in the amount of $6,463,778 against Tom Cabanas.[5] The judgment was affirmed by the United States Court of Appeals for the Eighth Circuit on August 15, 2008. On September 8, 2008, Tom Cabanas, as plaintiff in interpleader, but under the same case number as the tort litigation, filed an interpleader under the authority of 28 U.S.C. § 1335. The interpleader complaint alleges that as of the date of filing the amount of the judgment plus interest was $7,103,766.05 and that Cabanas had received conflicting claims for payment of the

---

[5] *Alternate Fuels, Inc. v. Tom Cabanas, et al*, case no. 02-1182-CV-W-JTM, United States District Court for the Western District of Missouri.

3

proceeds of the judgment from Kempton & Russell, LLC; Foland & Wickens, PC.; Stumbo Hanson, LLP;

W. K. and Earline Jenkins; the Missouri Department of Natural Resources; and Travelers. Shortly after the filing of the interpleader, the judgment amount was deposited with the clerk of the court. Additional parties intervened. The parties met for settlement conference/mediation on December 16, 2008, and $2,199,425.58 was paid out of the registry with consent of all the parties to the attorneys who represented AFI in the tort litigation.[6]

**THE COMPLAINT AND POSITIONS OF THE PARTIES.**

On February 3, 2009, AFI filed this adversary Complaint[7] against the United States, acting through the Clerk of the United States District Court for the Western District of Missouri. The Complaint alleges in Count I that the current funds in the court's registry in Case no. 02-1182-CV-W-JTM are property of the estate under § 541 and should be turned over to the Debtor in possession pursuant to §542(a) or § 543(b). In Count II, the Complaint seeks mandatory injunctive relief under §105 requiring turnover of the funds.

On March 3, 2009, Travelers filed the Motion in the main case to dismiss or suspend pursuant to § 305.[8] It submits that principles of comity require this Court to suspend or dismiss this Chapter 11 case in deference to the interpleader action in the District Court for the Western

---

[6] Kempton & Russell, LLC and Foland & Wickens, PC.

[7] *Alternate Fuels v. United States of America*, adv. case no. 9-06018.

[8] 11 U.S.C. § 305 provides in part:
    (a) The court, after notice and hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if –
        (1) the interest of creditors and the debtor would be better served by such dismissal or suspension;

4

District of Missouri, which acquired in rem jurisdiction over the impleaded funds approximately four months before the bankruptcy was filed. Travelers argues that the funds on deposit are not property of the AFI estate and the § 305 conditions for abstention are present. As stated above, Beachner Companies[9] and W. K. Jenkins[10] joined in Traveler's Motion.

On March 19, 2009, Travelers moved to intervene in the adversary proceeding. It asserts that it is an interested party, by virtue of its status as a defendant and a claimant in the interpleader action, and the named defendant in the adversary proceeding, the United States, does not adequately represent the interests of Travelers and other interpleader defendants. As to the merits of the Complaint, Travelers incorporated the memoranda filed in support of its Motion to dismiss or suspend and reasserts that this Court lacks jurisdiction over the impleaded funds because they are in custodia legis by the Western District of Missouri federal court and therefor are not property of the estate under § 541. The Court hereby grants Traveler's motion to intervene and will consider the memoranda filed in support of the Motion to dismiss or suspend when ruling on the Complaint.

Defendant United States has not filed an answer, but did appear at the March 20 hearing. Counsel announced on the record that it supports the Debtor's turnover Complaint. Counsel stated as follows:

> MS. TAYLOR: Good afternoon, Your Honor. Andrea Taylor again on behalf of the United States of America. And in particular the United States District Court for the Western District of Missouri.

---

[9] Doc. 57, case # 09-20173.

[10] Doc. 63, case # 09-20173.

> We have been brought into this case, Your Honor, because we received $5,000,000 from the State of Missouri on behalf of AFI or to benefit -- for the benefit of AFI. The clerk had acted as a custodian of those funds. And although we understand that there are other outstanding issues like the reclamation issue, our interest instead, is to make sure that those funds – that the funds are placed where the Court deems they are supposed to be placed. The District Court does not agree that the interpleader action is the best action or the best mechanism to determine where those funds should be placed.
>
> We believe that the judgment was in favor of AFI, the proceeds of AFI's judgment are in the Court's registry and AFI has filed for bankruptcy now. So we would like those funds, AFI's funds, to be transferred from the registry of the Western District of Missouri to the debtor in possession account in the registry of the bankruptcy court.
>
> A number of issues have surfaced, but we believe that the bankruptcy court is the best suited to resolve all of those competing claims to AFI's funds. We are in this case as an adversary defendant because AFI has asked us to turn the funds over to them but we do not want to do that without direction from this Court.
>
> We would be happy to draft the proposed order if the Court deems that appropriate. But, again, we believe that the Bankruptcy Court is better suited to oversee the adjudication of completing [sic] claims and priorities under the Bankruptcy Act within the framework of the bankruptcy proceeding.

**ANALYSIS AND CONCLUSIONS OF LAW.**

A necessary prerequisite for turnover under § 542 and § 543 is that the property to be turned over be property of the estate. The Debtor contends that the impleaded funds are property of the estate, and defendant United States agrees. However, the intervenor Travelers argues otherwise. There are surprisingly few cases addressing the question of when funds held by a clerk of a federal court pursuant to an interpleader proceeding are subject to turnover to a bankruptcy court.

6

Travelers relies upon *Casco Chemical*[11] and *National Cooperative Refinery*[12] when opposing turnover. *Casco* concerned a fund held by the clerk of the federal district court which had been deposited by Bunge in an interpleader action. Bunge had purchased accounts receivable from Casco through use of sight drafts, which were then purchased by a bank. When the sight drafts were dishonored, the bank sued Bunge to collect on the accounts receivable transferred to it. Bunge received notice of competing claims to the accounts and instituted an interpleader action, depositing funds with the court. Since none of the claimants or the court had received notice of an involuntary bankruptcy filing against Casco, the deposited funds were distributed to various claimants other than Casco on the day after the involuntary petition was filed. After Casco was adjudicated a bankrupt, the Trustee instituted summary turnover proceedings against the parties to whom the impleaded funds had been distributed. Under the bankruptcy laws in effect at the time, the actual possession of the funds by the debtor or the bankruptcy court on the date of the transfers was necessary for recovery. The court held that the funds were not in the possession of the debtor on the date of transfer because they "had not been deposited as those belonging to the Bankrupt. They were funds initially of Bunge and as to which Bunge asserted a number of parties, including Casco and the four identified claimants, were making adverse claims."[13] *Casco* is clearly distinguishable from this case. Bankruptcy law has changed since the *Casco* case. Under the Code, actual possession of property by the Debtor on the date of filing is not required for it to be included as property of the estate. Further in this

---

[11] *Abramson v. Superintendence Co., Inc. (In re Casco Chemical Co.)*, 335 F.2d 645 (5th Cir. 1964).

[12] *Nat'l Coop. Refinery Assoc. v. Rouse*, 60 B.R. 857 (D. Colo. 1986).

[13] *In re Casco Chemical Co.*, 335 F.2d at 649.

7

case, in contrast to *Casco*, the money held by the clerk was initially the money of the Debtor AFI, whereas in *Casco* the funds were the proceeds of accounts receivable purchased from Casco.

Likewise, the reasoning of *National Cooperative* does not convince this Court that the impleaded funds are not property of the AFI estate. In *National Cooperative*, NCRA had paid into the registry of the court $42,000 in oil production revenues. The parties claiming a right to the fund were the trustee of Empire Oil & Gas, the trustee of Alan Gable Oil, and Deep Rock Oil, a subsidiary of AGOD, also in bankruptcy. The trustee for Empire asserted a cross claim against the other two claimants. They sought to have the crossclaim dismissed, arguing, in part, that because the fund was the property of the bankruptcy estates of either AGOD or Empire the bankruptcy stay applied. The court rejected this contention finding that the purpose of the interpleader was to determine the title to the fund, and until that determination was made the deposited funds were not property of any debtor for purposes of § 362(a). In this case, AFI is not one of several claimants; the fund is a judgment which AFI was awarded in a jury trial. The claimants are creditors or potential creditors of AFI.

The facts of this case are similar to *NLT Computer*,[14] relied upon by the AFI. NLT had purchased computer software and licenses from Capital. It commenced an interpleader action when it owed $150,000 to Capital because it faced competing claims to the $150,000 asserted by several creditors of Capital, including the United States for unpaid withholding taxes. On the day the court had scheduled a hearing on the government's motion for summary judgment, counsel for two other creditors announced that an involuntary bankruptcy had been filed against

---

[14] *NLT Computer Serv. Corp. v. Capital Computer Systems, Inc.*, 755 F.2d 1253 (6th Cir. 1985).

Capital. The district court nevertheless proceeded on the government's motion, but was reversed on appeal. The Sixth Circuit Court of Appeals in dicta observed that it found unpersuasive the government's assertion that because it claimed an overriding lien in all of the proceeds, "the monies paid into the court's registry were somehow robbed of their character as property of the debtor and were, thus, not subject to the Bankruptcy Code with respect to their proper disposition."[15] It noted that the interpleader's only function was to allocate the fund between the creditors of Capital, the same function as vested in the bankruptcy court under the Code.

This Court agrees with the observations of the Sixth Circuit in *NLT Computers*. Whether funds deposited with the clerk of a federal district court are property of a debtor or a bankruptcy estate depends upon the specific circumstances of the interpleader case. If the bankrupt debtor is a claimant to the funds owned by a third party when deposited, only that portion of the impleaded funds actually owed to the debtor are property of the estate, and that amount generally should be determined in the interpleader case. In such circumstances, the interpleader serves the function of identifying the debtor's interest in property, and a motion for turnover should fail until that amount is known. However, where the deposited funds were owed by a third party to an entity that later files for bankruptcy relief and the claims to the fund rest upon the status of the claimants as creditors of the debtor, the role of the interpleader is similar to that of a bankruptcy court - to allocate the funds among creditors. This Court sees no reason why in such a situation the deposited funds should not be turned over to the bankruptcy court, which has been granted by Congress procedures and powers to resolve disputes concerning allocation of assets of insolvents.

---

[15] *Id.*, 755 F.2d at 1262.

9

The fact that the funds are held in custodia legis by the clerk for the District Court of Western Missouri does not place them beyond this court's jurisdiction. The district court in which a case is commenced under Title 11 or is pending "shall have exclusive jurisdiction . . . of all the property, wherever located, of the debtor as of the commencement of such case and of property of the estate."[16] There is no exceptoion for property held by other courts, whether state or federal. In a Chapter 11 case now pending before this court, *In re Brooke Corporation*,[17] there was no dispute that the estate included property which at the time of filing was under the control of a special master appointed prepetition by the federal district court to administer the affairs of Brooke as an aspect of litigation against it.

Section 543 provides for turnover of property of the debtor by a custodian to the case trustee. "Custodian" is defined by § 101(11) to include a "receiver or trustee of any property of the debtor, appointed in a case or proceeding not under this title" and a "trustee, receiver, or agent . . . that is appointed or authorized to take charge of property of the debtor for the purpose of . . . general administration of such property for the benefit of the debtor's creditors." Courts have held a state commissioner,[18] the clerk of a county court,[19] and a state court receiver[20] to be custodians. Although there are no reported cases holding that a court clerk holding a debtor's property in conjunction with a federal interpleader case, the Court finds the Clerk of the District

---

[16] 28 U.S.C. § 1334(e)(1).

[17] *In re Brooke Corp.*, case no. 08-22786.

[18] *Brown v. Dellinger (In re Brown)*, 734 F.2d 119 (2nd Cir. 1984).

[19] *Great Western Coal, Inc. v. Brown (In re Great Western Coal, Inc.)*, 146 B.R. 702 (Bankr. S.D. Tex. 1992).

[20] *In re 245 Assoc., LLC*, 188 B.R. 743 (Bankr. S.D.N.Y. 1995).

10

Court in this case comes within the plain meaning of the definition of custodian. The clerk is authorized to take charge of the proceeds of the judgment in favor of AFI, and the district court is authorized by the interpleader action to administer the property for the benefit of AFI's creditors. Pursuant to § 543(b), the clerk is required to deliver the funds to the trustee, which in this case is the debtor in possession.

Alternatively, even if § 543 were not applicable, the Court would order turnover under its equitable powers codified in § 105. In this case, the Debtor seeks turnover of the funds held by the Clerk of the District Court for the Western District of Missouri and the United States agrees that turnover will better serve the administration of the deposited funds. The Court agrees with the United States. The Code cannot be implemented in this case if the funds, which are the Debtor's primary asset, are not turned over to this Court. As compared with the interpleader case, this bankruptcy provides a superior forum for the determination of Debtor's liability to all claimants, including both those who are and those who are not parties to the interpleader action. All parties having claims against the Debtor will be given notice and a right to file a claim. The interpleader action has not progressed beyond the initial pleading stage. This Court, as would the Missouri federal court, will apply Missouri mining law when appropriate.

**CONCLUSION.**

For the foregoing reasons, the Court grants the Debtor's Complaint for turnover of the funds held by the Clerk of the District Court for the Western District of Missouri in Case no. 02-1182-CV-W-JTM to the debtor in possession. The United States shall prepare an appropriate order and submit it to the Court for consideration.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###